# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH PAVUCSKO, :

    Plaintiff, : CIVIL ACTION NO. 4:08-1878

    v. : (JONES, D.J.)
                                       (MANNION, M.J.)

KATRINA FIALA, :

    Defendant. :

## REPORT AND RECOMMENDATION[1]

On October 10, 2008, plaintiff Joseph Pavucsko, proceeding *pro se*, filed the instant action pursuant to 42 U.S.C. §1983. (Doc. No. 1). Plaintiff Pavucsko brings Fourth and Fourteenth Amendment claims as well as an intentional infliction of emotional distress ("IIED") claim against defendant Fiala. Pending before the court is defendant Fiala's motion for summary judgment. (Doc. No. 19). For the reasons set forth below, the court recommends that defendant Fiala's motion be **DENIED** in part and **GRANTED** in part.

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

## I. FACTS AND PROCEDURAL BACKGROUND[2]

The plaintiff, Joseph Pavucsko, brings this action against defendant Katrina Fiala, his ex-girlfriend who is a former Swatara Township Police Officer. The plaintiff and defendant began dating in 2005 and it appears that they dated until some point in June 2006. (Doc. No. 21-2 at 16-17[3]). After the relationship ended, the plaintiff was arrested, prosecuted and convicted of stalking the defendant. *Id.* at 34. In addition, in 2006, the defendant obtained a Protection from Abuse Order against the plaintiff. *Id.* at 15.

On the night of October 10, 2006, the plaintiff was driving in his Cadillac in Swatara Township. (Doc. No. 21-2 at 23-24). Specifically, he was driving from Walmart to his father's home, where he was residing, when he made a wrong turn. *Id.* He then entered into a parking lot to turn around. *Id.* at 24.

At that time, defendant was on duty, in uniform and operating a marked police vehicle. *Id.* at 34. At about 9:20 p.m., she observed a Cadillac, pull out

---

[2] The court has compiled the following facts by which to assess the motion for summary judgment from the plaintiff's complaint, defendant's statement of undisputed material facts and the attached exhibits . (Doc. No.'s 1 & 21).

[3] Citations to page numbers refer to the page numbers printed by the courts electronic case filing system at the upper right corner of the filed document.

from a bar parking lot and enter into another parking lot. *Id.* She then observed the Cadillac leave that parking lot and begin to drive erratically. *Id.* Consequently, defendant ran the tag number of the Cadillac on her vehicle's computer. (Doc. No. 21-2 at 34). The vehicle came back registered to her ex-boyfriend, the plaintiff. *Id.*

In order to avoid a potential conflict, the defendant contacted another police officer, namely Police Officer Morris of the Swatara Township Police Department, and informed him of what she had observed. (Doc. No. 21-2 at 34). More specifically, she told him that the Cadillac was swerving back and forth and that she believed the operator of the vehicle might be driving under the influence. *Id.* Defendant then told him that she thought the driver could be the plaintiff, her ex-boyfriend. *Id.* at 39.

At that point, Officer Morris told defendant that he would pull over plaintiff's vehicle, and handle the interaction. *Id.* As such, defendant drove behind the Cadillac until Officer Morris pulled the vehicle over. *Id.* at 34. Defendant then remained behind Officer Morris, and did not approach the vehicle any closer than was necessary to confirm that it was plaintiff who was

driving.[4] *Id.* Officer Morris then handled the interaction with the plaintiff. *Id.*

When Officer Morris approached plaintiff's vehicle, plaintiff asked Officer Morris why he was being pulled over. (Doc. No. 21-2 at 25). Officer Morris responded that another officer had reported he was driving erratically. *Id.* The plaintiff then asked who the officer was that made the claim regarding his driving. *Id.* Officer Morris responded that he did not know. (Doc. No. 1 at 3). Plaintiff asked Officer Morris a second time who the officer was that made the claim. (Doc. No. 21-2 at 25). This time Officer Morris stated that it was none of plaintiff's business and that he could not tell him that information. (Doc. No. 1 at 3). Officer Morris then stated that the plaintiff smelled like he had been drinking. *Id.* Plaintiff replied that he had not been drinking. (Doc. No. 21-2 at 25). In addition, plaintiff maintained that he was not driving erratically. *Id.*

Officer Morris then asked for plaintiff's driver's license, registration and proof of insurance. (Doc. No. 21-2 at 26). Accordingly, plaintiff provided that information to Officer Morris, and Officer Morris returned to his vehicle. *Id.* at 26-27. Upon returning to plaintiff's vehicle, Officer Morris issued plaintiff a traffic warning for careless driving as he did not find any grounds to believe

---

[4] Plaintiff purchased this Cadillac after he stopped dating defendant. (Doc. No. 21-2 at 31).

that plaintiff was driving under the influence. *Id.* at 27, 40. The entire traffic stop took no more than thirty (30) minutes. *Id.* at 26.

Following the October 10, 2006 incident, plaintiff alleges that he tried to file a complaint against defendant through the Swatara Township Police Department, but that he was denied the opportunity to do so as he did not receive a citation. (Doc. No. 1 at 3-4). Because the Swatara Township Police Department did not allow him to file a complaint, plaintiff contacted the Pennsylvania State Police for assistance with investigating the incident. *Id.* at 4. The investigation by the Pennsylvania State Police revealed his vehicle registration was queried, but did not reveal the officer responsible for the query. *Id.* In addition, the plaintiff was later informed by the Dauphin County DA's Office that the defendant did not run his license plate, but rather, Officer Morris ran his plate so. *Id*.

Based on the foregoing, plaintiff filed a complaint against defendant Fiala on October 10, 2008. (Doc. No. 1). The gravamen of plaintiff's complaint is that defendant Fiala "while acting under color of law, intentionally and with the intent to harass and intimidate and deprive the Plaintiff of rights made an unlawful action which resulted in an unwarranted traffic stop and violated the Plaintiff's constitutional rights." (Doc. No. 1 at 4). As such, plaintiff brings

Fourth and Fourteenth Amendment claims as well as a claim for intentional infliction of emotional distress against defendant.

On September 14, 2009, defendant filed a motion for summary judgment that was accompanied by a brief in support as well as a statement of material undisputed facts. (Doc. No.'s 19, 20 & 21). As of the date of this Report and Recommendation, plaintiff has failed to oppose defendant's motion. In accordance with Local Rule 7.6, the motion is deemed unopposed. It will, however, be given a merits review in accordance with *Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991), as plaintiff is proceeding *pro se*.

## II.  STANDARDS

### A. Summary Judgment

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is

material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Casualty & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is

some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322-23; *Jakimas v. Hoffman La Roche, Inc.,* 485 F.3d 770, 777 (3d Cir. 2007). Where, for example, the non-movant opposes summary judgment merely by standing on its own pleadings, and offers no other evidence in regard to a contested material fact, then the movant's motion will be granted. *See First Nat. Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968) ("What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him."); *Arnold Pontiac-GMC, Inc. v. General Motors Corp.,* 786 F.2d 564, 575 (3d Cir. 1986).

**B. Standard of Review of Substantive Law Under 42 U.S.C. §1983**

Section1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. §1983. Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the United States Constitution or federal law. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

### III.    LEGAL ANALYSIS

Defendant Fiala has raised various arguments as to why she is entitled to summary judgment on plaintiff's Fourth Amendment claim as well as plaintiff's intentional infliction of emotional distress claim. The court will consider these arguments below.

**A. Fourth Amendment Claim**

The Fourth Amendment, which is applicable to the States through the

Fourteenth Amendment, protects citizens from unreasonable searches and seizures. U.S. CONST. amend. IV. The Supreme Court has stated that temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Consequently, an automobile stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. *Id.* at 810. Thus, the Fourth Amendment requires a police officer conducting a traffic stop to have reasonable suspicion of criminal activity. *Delaware v. Prouse*, 440 U.S. 648, 654 (1979). *See also Commonwealth v. Andersen*, 753 A.2d 1289, 1292-93 (Pa. Super. Ct. 2000)(under Pennsylvania law, a police officer must meet the "reasonable and articulable" standard in order to stop of a motor vehicle). Moreover, courts determine whether reasonable suspicion exists by examining the totality of the circumstances surrounding the stop. *Whren*, 517 U.S. at 810; *Delaware*, 440 U.S. at 654; *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

Defendant contends, and the court agrees, that the issue before the court is whether defendant Fiala had reasonable suspicion of criminal activity

that would allow Officer Morris to make the traffic stop.[5] According to defendant Fiala, she believed that she had reasonable suspicion that plaintiff might be driving under the influence because she observed the plaintiff's vehicle exit a bar parking lot, enter another parking lot, and then drive erratically. (Doc. No. 21-2 at 34). Specifically, she states that plaintiff's vehicle was swerving on the road. *Id.* In addition, she argues that her reasonable suspicion was based on her own training experience as a police officer. Finally, she asserts that there is no indication that she targeted plaintiff's vehicle because he purchased this vehicle after they stopped dating. As such, she argues that it was reasonable for her to call another police officer, namely Officer Morris, to make the traffic stop.

If these facts were undisputed, then this traffic stop could be deemed reasonable and summary judgment for defendant might be appropriate. *See Bernardi v. Klein*, 682 F. Supp. 2d 894, 900 (W.D. Wis. 2010). However, a review of plaintiff's deposition testimony indicates that several of these facts

---

[5] Although plaintiff has not sued Officer Morris, the court notes that the Supreme Court has stated "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *United States v. Hensley*, 469 U.S. 221, 231 (1985).

are disputed. Specifically, plaintiff states that he was not swerving, speeding, or driving erratically in any way.

> Q. At any time, do you recall crossing over the double yellow line on Derry Street?
>
> A. No. I mean, just as any person would see a police officer, they typically stay within the confines of the speed limit and are probably a little bit more cautious of, you know, turning on their signals and stuff of that nature. I mean, it's just a natural –
>
> Q. But my question to you is what did you do, and –
>
> A. Drove the speed limit, stayed within the lines, drove safely period. There was no question about my driving.

(Pavucsko Dep. 62:4-15, June 10, 2009). Again during the deposition, plaintiff testified that in his opinion there was no reason for him to have been pulled over. (Pavucsko Dep. 78:20-21). Because plaintiff disputes the defendant's observations, namely whether defendant did know plaintiff was driving unsafely, defendant's observations cannot be used at this juncture to find that the traffic stop was reasonable.

As such, it appears the only facts that are not disputed are that plaintiff left a bar parking lot, that the defendant determined it was plaintiff's vehicle, and that plaintiff purchased the car after he and the defendant stopped dating. Consequently, with these remaining undisputed facts, the court cannot resolve on summary judgment, the question whether defendant violated

12

plaintiff's rights under the Fourth Amendment.

Alternatively, defendant argues that she is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* ___ U.S. ___, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 ( 1982)). In *Saucier v. Katz*, the Supreme Court established a two-step process for courts examining the qualified immunity of government officials. 533 U.S. 194, 201 (2001). "First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right." *Pearson*, 129 S. Ct. at 815-16 (citing Saucier, 533 U.S. at 201). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 816. Recently, in *Pearson*, the Supreme Court held that "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory." *Id.* at 818.

Here, in viewing the facts in a light most favorable to the plaintiff, the court believes that there are material issues of fact with respect to the

plaintiff's Fourth Amendment claim. Moreover, the court finds it was clearly established in October 2006 that officers may not stop a car without articulable facts creating a reasonable suspicion that the driver is breaking the law. *Delaware,* 440 U.S. at 654. Therefore, at this stage of the proceedings, the court cannot find that defendant Fiala is entitled to qualified immunity.

Therefore, the court recommends that defendant's motion for summary judgment on the Fourth Amendment claim be denied.

**B. Intentional Infliction of Emotional Distress Claim**

The Pennsylvania Supreme Court typically refers to Restatement (Second) of Torts §46 as establishing the "minimum requirements" for a claim of intentional infliction of emotional distress. *See e.g. Taylor v. Albert Einstein Med. Ctr.,* 754 A.2d 650, 652 (Pa. 2000) (citing *Kazatsky v. King David Mem'l. Park, Inc.*, 527 A.2d 988 (Pa. 1987); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3rd. Cir.1979)). Thus, an action for intentional infliction of emotional distress requires that: (1) the conduct be extreme; (2) the conduct be intentional and reckless; (3) the conduct cause emotional distress; and (4) the distress be severe. *Chuy,* 595 F.2d at 1273. The degree of outrageousness required is at least comparable to that required to support an award of punitive damages. *Wisniewski v. Johns-Manville Corp.,* 812 F.2d

81, 86 n.3 (3d Cir.1987). "It is for the court to determine, in the first instance, whether the actor's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery." *Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997) (citing *Reimer v. Tien*, 514 A.2d 566, 569 (Pa. Super. Ct. 1986)). Pennsylvania courts have defined the level of conduct required to be considered "outrageous":

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Id.* (citing *Small v. Juniata College*, 682 A.2d 350, 355 (Pa. Super. Ct. 1987) (quoting *Jones v. Nissenbaum, Rudolph and Seidner*, 368 A.2d 770, 773 (Pa. Super. Ct. 1976 )). In addition, the harm suffered by a plaintiff must go beyond mere emotional distress and include some physical injury. *Swisher*, 868 A.2d at 1230. The alleged severe emotional distress must be "supported by competent medical evidence." *Kazatsky*, 515 Pa. at 197. Therefore,

> the Pennsylvania Supreme Court has held that a plaintiff's own testimony concerning his emotional distress is not competent medical evidence to support the claim. *Kazatsky v. King David Mem'l Park, Inc.*, 515 Pa. 183, 527 A.2d 988, 995 (Pa. 1987); *see*

15

> also *Williams v. Guzzardi*, 875 F.2d 46, 51 (3d Cir. 1989) ("To prevent damages from being inferred from the defendant's conduct alone, the court require[s] some 'objective proof of severe emotional distress' . . . ." (quoting *Kazatsky*, 527 A.2d at 993)).

*Televandos v. Vacation Charters, Ltd.*, 264 Fed. Appx. 190, 192 (3d Cir. 2008).

Defendant Fiala argues that she is entitled to summary judgment on this claim. The court agrees. At plaintiff's deposition, he testified that he did not receive any medical treatment for his emotional distress. (Doc. No. 21-2 at 28). As such, the only evidence before the court with respect to plaintiff's IIED claim is plaintiff's own testimony, which is insufficient to support plaintiff's claim. *See Kazatsky*, 527 A.2d at 995. *See also Nudleman v. Borough of Dickson City Police Dep't*, No. 05-1362, 2007 U.S. Dist. LEXIS 82370, at *21-22 (M.D. Pa. Nov. 6, 2007) (finding summary judgment appropriate where the only evidence of emotional distress was plaintiff's testimony, and that testimony included plaintiff did not receive any medical treatment). Because there is no objective proof, namely competent medical evidence, in the record before the court as required to support plaintiff's IIED claim, defendant is entitled to summary judgment on this claim. *See Kazatsky*, 527 A.2d at 995.

Furthermore, based on plaintiff's deposition testimony, the court cannot find that any reasonable juror would conclude that plaintiff suffered severe

16

emotional distress. Plaintiff testified that he has suffered emotional distress because he is (1) paranoid to drive in Swatara Township and/or any other township that defendant may be employed, (2) scared of driving due to the possibility of another similar incident or worse, and (3) humiliated as his friends know about the incident. (Doc. No. 21-2 at 28-29). He also stated that it still causes him emotional distress knowing that he was targeted by a police officer for doing nothing illegal. *Id.* at 27. Despite plaintiff's paranoia and fears, he testified that after the incident, he continued to drive through Swatara Township in order to go to rugby practice. *Id.* at 28.

Consequently, the court recommends that defendant's motion for summary judgment on the IIED claim be granted.

### C. Fourteenth Amendment Claim

Although not addressed by defendant, the court finds that plaintiff has also brought a Fourteenth Amendment substantive due process claim against defendant Fiala. Because defendant Fiala has failed to raise any argument with respect to plaintiff's Fourteenth Amendment claim, the court should allow this claim to proceed.

## IV. RECOMMENDATION[6]

For the reasons elaborated upon above, **IT IS RECOMMENDED THAT** defendant's motion for summary judgment, (Doc. No. 19):

1) Be **DENIED** on plaintiff's Fourth Amendment claim and Fourteenth Amendment claim;

2) Be **GRANTED** on plaintiff's intentional infliction of emotional distress claim; and,

3) The matter be set down for trial in accordance with a schedule set by the trial judge.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE:** June 22, 2010
O:\shared\REPORTS\2008 Reports\08-1878-01.wpd

---

[6] For the convenience of the reader, the court has attached copies of unpublished opinions cited within this document.